UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHIAL L. DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:18-CV-003-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| DR. MARK ESPER, | ) | **ORDER** |
| Secretary of the Army, et al., | ) | |
| | ) | |
| Defendants. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, Fed. R. Civ. P. 12(b)(6). [R. 32] For the reasons below, the Court will **GRANT** Defendant's motion.

### I. Background

This case involves claims by Plaintiff Michial L. Dunn ("Dunn" or "Plaintiff") against the Acting Secretary of the Army (the "Army" or "Defendant"). [R. 1, Compl., ¶¶ 1-3] Specifically, Plaintiff asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §701 *et seq.,* the Age Discrimination in Employment Act of 1967 (the "ADEA"), 26 U.S.C. §621 *et seq.* Plaintiff alleges that the Army discriminated against him in 2013 when it had him re-evaluated for a workplace injury he suffered in 1994, then offered him a position that he was unable to perform, with the sole intention of revoking his federal Office of Workers' Compensation Programs ("OWCP") benefits. [R. 1, Compl., ¶¶ 15-40] In response, Defendant filed a motion to dismiss, arguing that Plaintiff's discrimination and retaliation claims against the Army are an "attempted .

. . end run around the [OWCP] appeals process by asking the Court to overturn the decision of the OWCP Board." [R. 32-1, at p. 1] Defendant contends that the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, strips the Court of jurisdiction in this case because it prevents review of whether the OWCP improperly denied the Plaintiff compensation.

In the alternative, Defendant argues that the Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because "the claims alleged fail to establish a prima case of (1) discrimination or retaliation under Title VII or (2) discrimination under the Rehabilitation Act and the Age Discrimination in Employment Act." [R. 32-1, at p. 1]

Because the Court finds that Plaintiff's Complaint (and all his discrimination claims) is really a collateral attack on the OWCP's decision to redetermine his benefits under FECA, the Court will **GRANT** Defendant's Motion to Dismiss pursuant to Rule 12(b)(1). In addition, the Court finds that Plaintiff's Complaint fails to state a claim and would be dismissed pursuant to Defendant's Rule 12(b)(6) Motion.

## II.     Standard of Review for Rule 12(b)(1) Motions

When considering a motion to dismiss pursuant to Rule 12(b)(1), the Plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017), *cert. denied sub nom. Wayside Church v. Van Buren Cty., Mich.*, 138 S. Ct. 380 (2017) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). A challenge to subject-matter jurisdiction under Rule 12(b)(1) is either a "facial attack," where the Court must take all of the allegations in the Complaint as true, or a "factual attack," where the Court can "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013) (citing *McCormick v. Miami Univ.,* 693 F.3d 654, 658 (6th Cir. 2012)) (internal quotation marks

omitted)). In challenging the Court's subject-matter jurisdiction, the Defendant attacked the factual background that gives rise to the Plaintiff's Complaint. *See* [R. 32-1, at p. 8] Thus, the Court will treat this as a factual attack. When ruling on a factual attack, "no presumptive truthfulness applies to the allegations," and the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). That is the analysis the Court will apply here.

### III. Standard of Review for Rule 12(b)(6) Motions

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

### IV. Factual and Procedural Background

Plaintiff began working as a boiler plant operator for the Defendant beginning on or about June 1, 1991. [R. 1, Compl., ¶ 8] Plaintiff is an African-American over the age of forty (40), who suffers from a disability, specifically carpal tunnel and a herniated disc. [R. 1, Compl.,

[¶ 7]  The Plaintiff claims that "[o]n or around January 25, 1992, Plaintiff suffered an on-the-job injury that led to a permanent total disability with carpal tunnel in both hands and recurrent back and leg pain." [R. 1, Compl., ¶ 9]  The Office of Workers' Compensation Programs ("OWCP"), a subdivision of the Department of Labor ("DOL") which "administers the FECA and is required to provide for limited duty jobs to accommodate employees with compensable job-related injuries," awarded Plaintiff temporary total disability compensation effective August 31, 1995. *Gantner v. Potter*, No. CIV.A. 3:03CV-644-S, 2007 WL 3342305, at *3 (W.D. Ky. Nov. 7, 2007) (describing OWCP's role); *Id.*; [R. 1, Compl., ¶ 10]

The OWCP continued to monitor the Plaintiff's medical condition, resulting in various proceedings not relevant here. Eventually, in 2013, the OWCP had the Plaintiff re-evaluated, resulting in a determination that Plaintiff was capable of performing limited work. On January 24, 2013, a doctor opined that while the Plaintiff could not perform the duties of a boiler plant operator, he could return to work eight hours a day in a limited duty position with certain restrictions. [R. 32-3, Ex. B-Tritz Decl., ¶ 11 and referenced attachments therein]  As a result, the OWCP determined that the medical evidence demonstrated that the Plaintiff could perform sedentary duties, and hence, was able to resume light duty work under certain restrictions. [R. 32-1, at p. 4]  On February 4, 2013, Debra K. Cowan, Human Resource Specialist for the U.S. Army Civilian Human Resource Agency, received a letter from the DOL requesting that she make a job offer to the Plaintiff that took into account the noted restrictions by the doctor. [R. 32-1, at. p. 4; R. 32-2, Ex. A – Cowan Decl., ¶ 6; R. 32-3, Ex. B – Tritz Decl., ¶ 11]  Ms. Cowan informed the Plaintiff that it was her role as the Agency's Injury Compensation Program Administrator to return employees to work. [R. 35, at p. 2]  Then, on March 25, 2013, Ms. Cowan extended an offered to the Plaintiff for a permanent limited-duty position as a facilities

management clerk. [R. 32-2, Ex. A – Cowan Decl., ¶ 7; R. 32-3, Ex. B – Tritz Decl., ¶ 11; R. 1, Compl., ¶ 12]. This position required inputting data into a computer while sitting in a chair, and incorporated certain restrictions not relevant here. [R. 32-1, Ex. A – Cowan Decl., ¶ 7] According to Ms. Cowan's Declaration, this job offer was sent to the Plaintiff via certified mail, and Ms. Cowan never met the Plaintiff in person. [R. 32-2, Ex. A – Cowan Decl., ¶ 8] According to her Declaration, Ms. Cowan did not know the Plaintiff's race, nor was she aware of his previous EEO filings. *Id.* On March 30, 2013, the Plaintiff declined the position. *Id.* at ¶ 9; [R. 1, Compl., ¶ 13] The Plaintiff alleges he refused this position "due to his permanent injuries." [R. 1, Compl., ¶ 13] On April 2, 2013, Ms. Cowan sent a letter to the OWCP notifying the agency that the Plaintiff refused the position offered. [R. 32-2, Ex. A – Cowan Decl., ¶ 9] On April 4, 2013, the OWCP communicated with the Plaintiff that the position offered was suitable, and if he refused, he would not be entitled to compensation. *Id.* The OWCP gave Plaintiff 30 days to accept the position or provide a justification for his refusal. *Id.* On May 8, 2013, the OWCP advised the Plaintiff that the justifications he provided for refusing the position were not valid. *Id.* The OWCP then afforded Plaintiff 15 days to accept the position or have his compensation benefits terminated. *Id.* On June 4, 2013, the OWCP issued a final decision terminating the Plaintiff's benefits. *Id.* at ¶ 10; [R. 1, Compl., ¶ 14].

Following this decision, the Plaintiff began a lengthy administrative challenge process. Eventually, in a decision dated March 11, 2016, the Employees Compensation Appeals Board ("ECAB"), the Board the reviews OWCP decisions, found that the OWCP improperly terminated Dunn's benefits as it failed to meet its burden of proof to establish that the Plaintiff refused an offer of suitable employment, as the medical evidence did not clearly establish that he could perform duties of a facilities management clerk. *Id.* (citing OWCP filings attached to

declaration). The Plaintiff's OWCP benefits were reinstated on April 2, 2016. [R. 32-2, Ex. A – Cowan Decl., ¶ 11] He is currently receiving OWCP benefits. *Id.* The Plaintiff additionally received a lump sum payment for benefits missed between the June 4, 2013 OWCP decision and the March 11, 2016 ECAB reversal. *Id.* As of January 6, 2018, the Plaintiff has been paid a gross total of $525,442.80 in disability compensation since August 31, 1995. [R. 32-3, Ex. B – Tritz Decl., ¶ 22]

Plaintiff then filed a Charge of Discrimination (Charge 470-2015-00012X) with the Equal Employment Opportunity Commission ("EEOC"), alleging *inter alia*, that Defendant had violated Title VII, the Rehabilitation Act, and the ADEA. [R. 1, Compl., ¶ 3] The EEOC issued Plaintiff a Right to Sue letter. [R. 1, Compl., ¶ 4] The Plaintiff then filed his Complaint in the Southern District of Indiana [R. 1, Compl.] before that court transferred this case to the Eastern District of Kentucky [R. 21] This Motion to Dismiss followed.

## V. Discussion

### A. The Court Lacks Subject-Matter Jurisdiction, Mandating Dismissal Under 12(b)(1)

In his Complaint, Plaintiff alleges that the Army, not the OWCP, had Plaintiff re-evaluated and changed his disability from permanent to temporary. [R. 1, Compl., ¶ 11; R. 35, at p. 1] In doing so, Plaintiff alleges that the Army violated Title VII, the Rehabilitation Act, and the ADEA. [R. 1, ¶ 3] Specifically, the Plaintiff alleges that the Army discriminated against him (1) "on the basis of race when it offered him a job assignment for the express purpose of terminating his OWCP benefits" [R. 1, Compl., ¶¶ 16, 19]; (2) "on the basis of disability, perceived disability, and/or record of disability when it offered him a job he was unable to do with the intent of ending his OWCP benefits" [R. 1, Compl., ¶¶ 26, 28]; and (3) on the basis of his age (Plaintiff is over the age of forty) when it offered him a job he could not do with the

intent of extinguishing his OWCP benefits. [R. 1, Compl., ¶¶ 33-34, 37] Plaintiff also alleges that this scheme constituted retaliation for previously filing an EEOC claim. [R. 1, ¶ 42] (Plaintiff previously filed a charge alleging racial discrimination in 1996). [R. 1, Compl., ¶¶ 42-45]).

Defendant argues that the heart of Plaintiff's Complaint is the 2013 decision by the OWCP to end Plaintiff's disability payments. [R. 36, at p. 1] This renders his claims collateral attacks on the OWCP's decision. As such, Defendant argues that FECA provides the only redress for Plaintiff's work-related injury claims, and Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). Because the Court finds that the Plaintiff's complaint is really an attack on a decision of the OWCP to terminate benefits, and because the law is clear that a collateral attack on such a decision is barred, the Court agrees.

### a) Collateral Attacks on FECA Benefits Decisions are Barred

FECA is a comprehensive statutory scheme that operates essentially as a federal workers' compensation law, *see* 5 U.S.C. §§ 8101–8193, the purpose of which is "to provide quick and uniform coverage for work-related injuries." *Woodruff v. United States Dep't of Labor,* 954 F.2d 634, 639 (11th Cir. 1992) (per curiam). Under FECA, "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a). The Secretary of Labor has the authority to "administer, and decide all questions arising under" FECA, which authority may be delegated "to any employee of [the DOL]." 5 U.S.C. § 8145.

Pursuant to § 8128(b), "[t]he action of the Secretary or his designee in allowing or denying a payment under this subchapter is . . . (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the

United States or *by a court by mandamus or otherwise.*" *Id.* (emphasis added). The Supreme Court has recognized § 8128(b) as an example of "Congress intend[ing] to bar judicial review altogether," given the provision's "unambiguous and comprehensive" language. *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779–80 & n.13 (1985); *see also Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90–91 (1991).

The Plaintiff and Defendant agree that judicial review of compensation determinations is precluded under 5 U.S.C. § 8128(b). *See* [R. 32-1, at p. 1; R. 35, at p. 4] Where they disagree is whether plaintiff is challenging a compensation determination by the OWCP.

### b) OWCP Made the Decision to Terminate Benefits

Defendant alleges that "despite Plaintiff's assertions to the contrary, the OWCP (a subdivision of the DOL) was the agency that determined that the Plaintiff could return to work, that the job offered to him was suitable, and ultimately whether or not to terminate the Plaintiff's OWCP benefits." [R. 36, at p. 3 (*citing* 5 U.S.C. § 8106(c))] The Court may resolve this factual dispute in the manner that is the most plausible based on all the facts before it when deciding a motion under Rule 12(b)(1). *Gentek Bldg. Prods., Inc.*, 491 F.3d 330. Plaintiff supplies no support for his assertions that the Army, not the OWCP, had him re-evaluated. The Army, however, supplied the Declarations of Debra K. Cowan, Human Resource Specialist for the U.S. Army Civilian Human Resource Agency, and Julia A. Tritz, Deputy Director for Operations and Claims Management, Division of Federal Employees' Compensation, United States Department of Labor. *See* [R. 32-2; R. 32-3]. These Declarations detail the entire process of Plaintiff's claims history and make clear that OWCP was the organization making benefit determinations in this case, while the Army simply offered plaintiff a job per OWCP's request. The Court therefore finds that the OWCP, and not the Army, had Plaintiff's benefits re-determined.

### c) Plaintiff's Complaint is a Collateral Attack on OWCP's Decision

While the Court may resolve the factual dispute under Rule 12(b)(1) of *which entity was responsible* for re-determining Plaintiff's benefits, under that provision, the Court may not challenge the factual findings and legal conclusions of the OWCP. *See Luellen v. Henderson*, 54 F. Supp. 2d 775, 780 (W.D. Tenn. 1999) ("The OWCP's finding that a particular job constitutes suitable work falls within the ambit of those questions of law and fact made 'in allowing or denying a payment under this subchapter' and therefore is unreviewable…") (citing 5 U.S.C. § 8145). Here, the OWCP found that the new job assignment for Plaintiff was suitable given his redetermined job eligibility.[1] The Court may not disturb this finding. *See, e.g.*, *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998) (holding that a "frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to [relief] when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision.).

Yet that is exactly what the Plaintiff's Complaint asks this Court to do. This case is almost identical in relevant part to several other cases in which the Sixth Circuit and other courts have found discrimination claims foreclosed by FECA. In *Woods v. Runyon*, 64 F.3d 664 (6th Cir. 1995), the plaintiff's Title VII claim included a claim that a job offer made by OWCP during the period of her disability (which the plaintiff rejected, leading to her termination of benefits) was invalid. The Sixth Circuit affirmed the district court's grant of summary judgment to the defendant, explaining that "OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable. . . .Therefore, because 5 U.S.C. § 8128(b)(1) makes

---

[1] As noted above, this decision was eventually reversed by the ECAB. Yet if anything, far from somehow removing the bar on collateral attacks, this fact merely suggests that Plaintiff's Complaint is moot. *See Luellen*, 54 F. Supp. 2d at 782 ("Whether the OWCP decision was subject to a later appeal has little bearing upon § 8128(b)'s prohibition against review of the OWCP's job suitability determinations.").

the OWCP determinations conclusive 'with respect to all questions of law and fact,' and because the OWCP found the job offer made to [the plaintiff] valid, [the plaintiff] cannot collaterally attack the validity of the job offer in federal court." *Woods v. Runyon*, 64 F.3d 664 (6th Cir. 1995). Similarly, in *Meester*, a plaintiff's Rehabilitation Act claim sought accommodations in performing a position she was awarded under FECA. *Meester*, 149 F.3d at 857. The Eighth Circuit upheld a grant of summary judgment and found the claim foreclosed by FECA, because it "essentially ask[ed] [the court] to hold that the Department of Labor was wrong in directing her to accept this position," and "[s]uch a holding would contravene FECA's prohibition against judicial review of compensation decisions." *Id.* Finally, in *Luellen*, 54 F. Supp. 2d at 776, the Western District of Tennessee applied *Meester* and *Woods* to find a failure-to-accommodate claim under the Rehabilitation Act failed under Fed. R. Civ. P. 12(b)(1), because it constituted a collateral attack on OWCP's determination that the job in question constituted suitable work. *Luellen*, 54 F. Supp. 2d at 782.

Likewise, in this case, Plaintiff alleges in connection with each of his claims that he was offered a job he could not perform so that the Army could terminate his position for discriminatory purposes. [R. 1, Compl., at ¶¶ 16, 26, 36, 45] However, in order to evaluate these claims, the Court must first accept the conclusion that the Plaintiff could not perform the job which the Army offered him. To accept this factual conclusion would amount to a direct contradiction of the OWCP's factual findings at the time, which the Court is not permitted to do.

Plaintiff argues that he is seeking different relief under different statutes against a different entity. *See* [R. 35, at pp. 4-5] Certainly, this is a theoretical possibility. The scope of the "injury" covered by FECA is not unlimited, and the mere receipt of FECA benefits does not strip a plaintiff of his right to seek redress for intentional discrimination under statutes such as

Title VII, the Rehabilitation Act, and the ADEA. *See Karnes v. Runyon*, 912 F. Supp. 280, 284–85 (S.D. Ohio 1995) (Title VII and Rehabilitation Act claims available notwithstanding recovery under FECA); *DeFord v. Secretary of Labor,* 700 F.2d 281 (6th Cir.1983) (injuries due to discrimination, mental distress, or loss of employment are not injuries covered by FECA); *McDaniel v. U.S.*, 970 F.2d 194, 198 (6th Cir. 1992) ("in *DeFord*, we held that no substantial question arose as to whether FECA covered intentional discrimination, and that FECA did not cover such an injury"); *Miller v. Aldridge*, No. CIV. A. 88-2731, 1989 WL 62503, at *2 (E.D. La. June 5, 1989), *on reconsideration in part*, No. CIV. A. 88-2731, 1989 WL 97927 (E.D. La. Aug. 14, 1989) (injuries from ADEA are available in addition to FECA). However, under the facts of this particular case, the Court is forced to conclude that Plaintiff's Complaint is really a collateral assault on the OWCP's determination. Indeed, the core of every claim in Plaintiff's Complaint rests on the challenge to the OWCP's determination. Thus, the entirety of his Complaint concerns claims over which this Court has no subject-matter jurisdiction, mandating dismissal under Rule 12(b)(1).

### B. The Complaint Fails to Meet the *Twombly/Iqbal* Standard, Mandating Dismissal Under 12(b)(6)

Even if the Court had jurisdiction to review the Plaintiff's claims, they would still fail under Fed. R. Civ. P. 12(b)(6). As explained above, to meet the *Twombly/Iqbal* plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). None of Plaintiff's claims rise above such threadbare recitals, and they must therefore be dismissed.

#### a) Title VII Discrimination Claim

Plaintiff's Title VII race discrimination claim fails under (12)(b)(6), because the

Complaint does not allege sufficient facts to support a *prima facie* case of discrimination Under Title VII, a plaintiff proceeding (as here) without the benefit of direct evidence of discrimination must first make out all the elements of a *prima facie* case: (1) that he is a member of a protected class; (2) he was qualified for the job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or treated less favorably than a similarly situated individual outside of his protected class. *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014).

There is no question that the first element is met, but Plaintiff fails to allege facts supporting any of the other elements. He makes no allegations regarding his qualifications and performance. He also fails to allege any adverse employment action other than the Army offering him a job. But *Woods* held that a job offer is not an adverse employment action where, as here, "the OWCP designated the job . . . as valid . . . the position was medically approved . . . [the plaintiff] did not accept the valid position and failed to explain the non-acceptance." *Woods*, 64 F.3d 664 (6th Cir. 1995). As to the fourth element, the Plaintiff's sole allegation is that "[s]imilarly situated white employees who receive OWCP benefits were treated more favorably than Plaintiff." [R. 1, Compl., at ¶ 17] This conclusory statement is, in reality, content-free. It does not allow the court to infer more than the mere possibility of misconduct. *See Iqbal,* 556 U.S. at 678. Accordingly, Plaintiff cannot make out a *prima facie* case for discrimination under Title VII, dooming his claim.

### b) ADEA Discrimination Claim

Plaintiff's ADEA claim fails for much the same reason. ADEA age discrimination claims follow the same framework as Title VII discrimination claims, and as such require an

initial showing by the plaintiff of a *prima facie* case. The elements of a *prima facie* case of age discrimination under the ADEA are that the plaintiff (1) was at least 40 years old at the time of the alleged discrimination, (2) was subject to an adverse employment action, (3) was qualified for the position, and (4) was replaced by someone younger. *Steele v. Edward D. Jones & Co. L.P.*, No. 18-5973, 2019 WL 3430887, at *2 (6th Cir. July 30, 2019).

Here too, Plaintiff meets the first element as he alleges he was over 40 years of age at the time of alleged discrimination, but fails to show the other elements. Though *Woods* was a Title VII case, the Court finds its logic just as persuasive in the ADEA context; accordingly, as discussed above, the Plaintiff has failed to allege an adverse employment action. Likewise, as already discussed, Plaintiff makes no allegations regarding his qualifications. As to the final element, Plaintiff alleges in a conclusory fashion that "[y]ounger employees outside Mr. Dunn's protected class were treated more favorably in that the Defendant did not take steps to deny them their OWCP benefits." *Id.* at ¶ 34. As above, this simply does not contain any actual facts, and the Court need not accept this "threadbare recital" as true for purposes of the Motion to Dismiss. *Iqbal*, 556 U.S. at 678. Thus, Plaintiff's ADEA claim is likewise fatally flawed.

### c) Rehabilitation Act Discrimination Claim

Plaintiff's Rehabilitation Act claim fares no better. This claim too requires an initial showing by the Plaintiff of a *prima facie* case. For a Rehabilitation Act claim, the elements of that case are that the plaintiff (1) is disabled, (2) is "otherwise qualified" for participation in the program, (3) is being excluded from participation in, denied the benefits of, or subjected to discrimination because of his disability or handicap, and (4) the program receives federal financial assistance. *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 838 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 2022 (2019).

Granting the first, third, and last elements for the sake of argument, Plaintiff does not allege any facts to show that he was excluded from participation in, denied the benefits of, or subjected to discrimination because of his disability or handicap. He merely alleges that the Army discriminated against him "on the basis of his disability, perceived disability, and/or record of disability when it offered him a job he was unable to do with the intent of ending his OWCP benefits." *Id.* at ¶ 26. This argument fails for two reasons. First, as previously explained, the Army did not offer him a job that he could not perform. The OWCP found the position suitable, and the Court cannot disturb this factual finding under FECA even under the 12(b)(6) pleading standard. Next, this statement, without more, is not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegation that the Army acted with the intent of ending his benefits is simply without any supporting factual basis. It is a mere conclusory statement that the Court need not credit for purposes of this motion to dismiss. Accordingly, Plaintiff's Rehabilitation Act claim suffers the same fate as his other discrimination claims.

### d) Retaliation Claim

Plaintiff's retaliation claim fails for exactly the same reason as his discrimination claims. Plaintiff's complaint does not state under which statute he brings his retaliation claim, but the Court will assume that he meant to bring it under one or all of the statutes underlying his discrimination claims. Under all three statutes, a plaintiff must first show a *prima facie* case of retaliation, and the elements are essentially the same: (1) he engaged in activity protected by the relevant statute; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Laster*

*v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (Title VII); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (ADEA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act). A Title VII retaliation claim "must be proved according to traditional principles of but-for causation … [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).[2]

Here, Plaintiff bases his retaliation claim upon his filing of a racial discrimination charge with the EEOC in 1996. *See* [R. 1, Compl., at ¶¶ 43-46]. The Court will assume that this satisfies the first element of the *prima facie* case. Similarly, while the Court doubts the sufficiency of the allegation that Plaintiff's "supervisor and other management employees were aware of" his 1996 EEOC charge, it does not change the outcome. As to the adverse action, the Court sees no reason why the job offer should count as "adverse" for purposes of a retaliation claim when it does not count as adverse for purposes of discrimination claims. Finally, this claim, as with the others, fails at the final prong: causation. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (applying Title VII standard). "How close is 'very close'? . . . [O]ur cases indicate that the line should be drawn shy of the ten-week mark." *Stein v. Atlas Indus., Inc.*,

---

[2] Since the Plaintiff's claims fail under any causation standard, the Court does not analyze the causation standards under the ADEA or the Rehabilitation Act.

730 F. App'x 313, 319 (6th Cir. 2018) (FMLA retaliation context).  Here, the Plaintiff does not allege when his employer learned of his protected activity.  But the activity happened in 1996—approximately *seventeen years* before the Army offered a job to Plaintiff.

Clearly, in order to state a claim for retaliation, Plaintiff must allege some other evidence that might plausibly show causation.   But there is simply no such allegation in the Complaint, meaning the retaliation count fails to state a claim as a matter of law.

## VI. CONCLUSION

For all these reasons, the claims against the Army will therefore be dismissed.  Based on the above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Defendant's Motion to Dismiss [**R. 32**] is **GRANTED**.

2. A separate Judgment will be entered consistent with this Order.

This the 30th day of September, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY